Being unable to agree with the majority opinion, I respectfully dissent.
The majority opinion relies on State ex rel. Royal v. Indus. Comm. (2002), 95 Ohio St.3d 97, State ex rel. Nicholls v. Indus. Comm. (1998),81 Ohio St.3d 454, and State ex rel. Foster v. Indus. Comm. (1999),85 Ohio St.3d 320 to support the writ it grants. I do not find any of those cases controlling, as each addressed the commission's failure to specify the grounds on which it granted reconsideration. That failure not only impeded judicial review of the decision agreeing to reconsider, but inhibited the parties' ability to know how to prepare for the commission's reconsidering, in most cases, a compensation award. By contrast, the commission here has not agreed to reconsider, but simply has advised that it would hold a hearing to determine whether grounds exist for granting a motion for reconsideration. Indeed, the commission at this point knows little, if anything, more than has been expressed by the party seeking reconsideration, and thus would have some difficulty specifying anything more than the parties have submitted in their briefs on the issue.
In my opinion, the order subject of relator's case is interlocutory, and I would grant the commission's motion to dismiss.
 APPENDIX A IN MANDAMUS AND/OR PROHIBITION
Relator, Dennis R. Caudill, filed this original action in mandamus and/or prohibition asking the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order setting a hearing on an application for reconsideration and a tentative hearing on a motion to terminate compensation for permanent total disability ("PTD"), and to issue a new order in compliance with applicable law.
Findings of Fact:
1. In July 1996, the commission awarded PTD compensation to Dennis R. Caudill ("claimant").
2. In March 2000, the Ohio Bureau of Worker's Compensation ("bureau") received a tip that claimant was engaging in work activities. The bureau investigated and filed a motion in March 2001 seeking to terminate claimant's PTD compensation on the basis that he had engaged in physical activities that showed he "was capable of returning to gainful employment." The bureau also alleged fraud.
3. In May 2001, a hearing on PTD termination was held before a staff hearing officer ("SHO"), who denied the bureau's motion:
 The Staff Hearing Officer finds that the claimant was awarded permanent total compensation by the Industrial Commission per order dated 7/12/96. The order stated that the claimant was found to be limited to sedentary work and not able to return to his former position of employment due to the allowed conditions in the claims. The order analyzed the claimant's intellectual and academic abilities based on testing, along with his age and work experience. The order further noted the employability assessment report of vocational evaluator Cherrylanne Norwood, which concluded that the claimant is unemployable.
 The Bureau of Workers' Compensation investigated the claimant's activities on sixteen occasions beginning April 7, 2000, following an anonymous call reporting claimant's alleged employment. In addition to obtaining videotape evidence of the claimant's activities, the Bureau of Workers' Compensation obtained affidavits from the claimant and Dallas Bates, owner of Ron's Towing. The surveillance evidence shows the claimant using his keys to open the locked office door at Ron's garage on occasion, talking to people coming and going from Ron's Towing, performing mechanical work on automobiles and obtaining auto parts from junk yards and auto parts stores. The claimant's affidavit states that he is a personal friend of Dallas Bates and goes to the business, Ron's Towing "to do something to get out of the house." The claimant further stated that he assisted Mr. Bates by helping with brake jobs, running to get parts, replacing fan belts, batteries and starters, changing oil and giving tools needed for mechanic jobs. The claimant further stated that he averaged "about 30 hours a week at Ron's" and never was paid "for helping Mr. Bates."
 The Bureau of Workers' Compensation alleges that the claimant's activities as described above constitute engaging in sustained remunerative employment despite the fact that the claimant has not been paid for his activity. The Staff Hearing Officer finds that the claimant and Mr. Bates, owner of Ron's Towing, never entered into an employment relationship. Specifically, there is no evidence of a contract for hire, express or implied, oral or written which governs or binds either the claimant or Mr. Bates to the performance of any activities or the payment of wages. The Staff Hearing Officer finds that the claimant's activities are characterized as volunteerism.
 The Staff Hearing Officer further finds that the claimant's activities are consistent with those found by the Industrial Commission order which granted permanent total compensation, i.e. sedentary strength. The Staff Hearing Officer further finds that it is merely speculation to conclude that the claimant would be capable of performing sustained remunerative employment as a car mechanic.
4. The bureau filed a form IC-12 "notice of appeal," challenging the decision of the SHO.
5. In July 2001, the commission issued the following order:
INTERLOCUTORY ORDER
 The Administrator's request for reconsideration, filed 06/06/2001, from the Staff Hearing Officer order issued 05/22/2001 is referred to the Commission Level Hearings Section to be docketed before the Members of the Industrial Commission. The issues to be heard are:
 1. The Administrator's request for the Industrial Commission to invoke its continuing jurisdiction pursuant to Ohio Revised Code 4123.52, and
 2. Issue: (1) Terminate Permanent Total-Declare PTD Overpayment and (2) Permanent Total Disability Fraud.
 It is the finding of the Industrial Commission that the Administrator has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.
 Specifically, it is alleged that the Staff Hearing Officer did not apply the correct legal standard in determining that the claimant is eligible for continued permanent total disability compensation. Based on these findings, the Industrial Commission directs that the Administrator's request for reconsideration, filed 06/06/2001, is to be set for hearing to determine if the alleged mistake of law as noted herein is sufficient for the Industrial Commission to invoke its continuing jurisdiction.
 In the interests of administrative economy and for the convenience of the parties, after the hearing on the question of continuing jurisdiction, the Industrial Commission will take the matter under advisement and proceed to hear the merits of the underlying issues. The Industrial Commission will thereafter issue an order on the matter of continuing jurisdiction under Ohio Revised Code 4123.52. If authority to invoke continuing jurisdiction is found, the Industrial Commission will address the merits of the underlying issues.
 This order is issued pursuant to State ex rel. Nicholls v. Indus. Comm. (1998) 81 Ohio St.3d 454, State ex rel. Foster v. Indus. Comm. (1999) 85 Ohio St.3d 320, and in accordance with Ohio Administrative Code 4121-3-09. * * * (Emphasis added.)
6. In August 2001, claimant filed the present action.
 7. The commission set the hearing for Tuesday, September 11, 2001.
 8. On August 5, 2001, claimant filed a motion for an emergency alternative writ or peremptory writ to stop the hearing from going forward on September 11.
 9. The commission agreed to continue the hearing for several weeks to permit the parties to brief and argue the matter in this court. The parties filed briefs pursuant to an accelerated schedule and appeared for oral argument on October 15, 2001, by agreement.
Conclusions of Law:
Claimant seeks to stop the commission from holding a hearing. The stated purpose of the hearing is to rule on an application for reconsideration filed in June 2001, that is, to decide whether there are grounds to rehear the bureau's March 2001 motion seeking to terminate PTD compensation. Specifically, the commission has set a hearing on the question of whether to grant or deny an application for reconsideration, and, at this hearing, it will determine whether it may exercise continuing jurisdiction to address the question of termination of PTD. The commission has stated that, if it finds grounds to exercise continuing jurisdiction, it will then hold a hearing to consider the merits of the bureau's motion to terminate claimant's PTD compensation.
Several established principles apply to the court's consideration of claimant's request for a writ. First, after the commission has issued a final order awarding PTD compensation, the commission has authority under R.C. 4123.52 to modify the order when circumstances warrant. In State ex rel. Smothers v. Mihm (1994), 69 Ohio St.3d 566, the court observed that the lifetime nature of a PTD award does not mean that the award is immune from later review. If the claimant is working or "engaging in activity inconsistent with his permanent total disability status," the commission can exercise jurisdiction under R.C. 4123.52 to amend the order and terminate PTD compensation. Id.
Courts have held that the commission may terminate PTD based on a finding that the claimant (1) has engaged in activities inconsistent with permanent total disability, (2) has engaged in sustained remunerative work, or (3) is capable of engaging in some form of sustained remunerative work. See Smothers, supra; see, also, State ex rel. Schultz v. Indus. Comm. (July 19, 2000), Franklin App. No. 00AP-166, unreported (Memorandum Decision) (upholding termination of compensation based on activities inconsistent with PTD where there was evidence of part-time work activities but no evidence of pay); State ex rel. Holt v. Indus. Comm. (Oct. 26, 2000), Franklin App. No. 00AP-1, unreported (Memorandum Decision) (upholding termination of PTD where there was evidence of recreational/sports activities inconsistent with PTD but no evidence of work activities nor evidence of gainful employment). Thus, according to the holdings in Smothers, Schultz, and Holt, it is not required, for the termination of PTD, for the commission to find that claimant was involved in "gainful" employment or any employment relationship at all. Engaging in activities inconsistent with permanent total disability is sufficient.
Further, in order to terminate PTD, the commission need not have a medical report stating that the claimant is capable of sustained remunerative employment. When there is evidence that claimant has actually engaged in certain physical activities, it is not necessary to have an expert opinion that the claimant is capable of performing those activities. State ex rel. Beal v. Indus. Comm. (Dec. 12, 1996), Franklin App. No. 95AP-1267, unreported (Memorandum Decision), affirmed (1998),83 Ohio St.3d 361. Likewise, a medical opinion that claimant is incapable of certain activities may be impeached by evidence indicating that claimant actually performed those activities. Id.
In regard to administrative decisions to grant or deny reconsideration, the commission has issued Adjudicatory Resolution R98-1-03 (May 6, 1998), a copy of which is attached to relator's brief. According to the resolution, after threshold requirements are met, the commission may grant a reconsideration application only when: (a) there are new and changed circumstances occurring subsequent to the date of the order from which reconsideration is sought; (b) there is evidence of fraud in the claim; (c) there is a clear mistake of fact in the order from which reconsideration is sought; (d) there is a mistake of law of such character that remedial action would clearly follow; or (e) there is an error by the inferior administrative agent or subordinate hearing officer in the order from which reconsideration is sought which renders the order defective.
The resolution does not set forth how the commission may determine whether one or more of these criteria have been met whether it may decide solely upon examination of the written application and response, or whether the commission may hold a hearing to help it decide whether to grant or deny reconsideration.
There is nothing in the resolution that requires a hearing or prohibits a hearing for the purpose of deciding whether one of the listed criteria has been met, prior to granting or denying an application for reconsideration. Claimant has cited no legal authority that would bar the commission from setting a hearing before granting or denying a reconsideration application. Indeed, there appears to be no reason that the commission could not set a hearing on any application or motion before it.
There are, however, judicial decisions setting forth requirements for commission orders granting reconsideration. The Ohio Supreme Court has held that an order granting reconsideration constitutes an abuse of discretion when it is based on the mere possibility of unspecified error. State ex rel. Nicholls v. Indus. Comm. (1998), 81 Ohio St.3d 454; State ex rel. Chaffins v. Indus. Comm. (1998), 82 Ohio St.3d 268.
Likewise, the commission abuses its discretion when it issues an order finding a "clear error" and setting a new hearing on the merits but failing to identify the error. State ex rel. Foster v. Indus. Comm. (1999), 85 Ohio St.3d 320. In Foster, the commission granted a new hearing on the merits stating that the application presented evidence of "a clear mistake of fact and of law in the order from which reconsideration is sought," but the commission did not state the nature of the error. The Ohio Supreme Court explained that the commission, in an order granting reconsideration, must "identify the error" and "reveal, in a meaningful way," why continuing jurisdiction is being exercised. Id. at 322.
The magistrate acknowledges that the motion to terminate PTD (filed in March 2001) poses questions separate and distinct from the application for reconsideration (filed in June 2001). The hearing on whether to grant reconsideration will focus solely on whether the SHO applied the correct legal standard for terminations of PTD. The hearing on the merits of the bureau's motion to terminate PTD, if any, will focus on medical evidence, claimant's recent physical activities, the bureau's investigation, etc. Thus, a determination on the legal standard will not determine the motion to terminate compensation.
In the present action, the commission issued an order in July 2001 in which it set the application for hearing but expressly refrained from deciding whether to grant or deny reconsideration. The commission did not make a finding that there was a clear mistake of law in the SHO order. The commission did not find that there was no mistake of law in the order. The commission simply stated that it would hold a hearing to decide whether to grant the application for reconsideration.
The magistrate concludes that claimant has not met his burden of proving that the court must prohibit the commission from holding a hearing on the issue of whether to grant or deny the application for rehearing.
The remaining question is whether the commission, following the hearing on the application for reconsideration, may proceed directly to a hearing on the merits of the motion to terminate PTD if it should decide to grant the application for reconsideration,.
In its order, the commission stated that, at the hearing, it would address whether to grant or deny reconsideration and explained that, if it decided that there were grounds for exercising continuing jurisdiction, it would then proceed to hold a hearing on the merits of whether to grant or deny the motion to terminate PTD.
In essence, this court must decide whether the commission, if it decides to grant reconsideration at the upcoming hearing, has the discretion (1) to announce its decision and then proceed to hold the hearing on the merits of the bureau's motion to terminate PTD, or whether the commission (2) must issue a written decision setting forth its reasons for granting the application and then set a subsequent hearing on a later date to consider the merits of the motion to terminate PTD.
At oral argument, the commission noted the efficiency of the former course while the claimant argued the practical inconvenience. For example, claimant argued that, for him to bring witnesses from Cincinnati to Columbus for a merits hearing that may not even take place (if he obtains a decision denying reconsideration) would be an undue burden. The commission argues that, if it were to grant reconsideration but not hold the merits hearing until a later date, claimant and his counsel would have make a second trip to Columbus. The commission argues that the parties' and the commission's efficiency and convenience can be maximized by holding the first hearing and, if necessary, a second hearing, on the same day. The commission argues that its procedural mechanism is reasonable and does not violate the requirements of Nicholls and Foster.
The magistrate concludes that the procedural mechanism set forth by the commission in its July 2001 order does not violate the principles set forth in Nicholls and Foster in that the order at issue does not grant or deny the application for reconsideration. However, the requirement remains that, if the commission grants reconsideration, it must identify the legal error in the SHO decision and meaningfully explain why it is proceeding to exercise continuing jurisdiction to hear the merits of PTD termination.
Therefore, following the upcoming hearing, if the commission should decide to grant reconsideration, it must issue an order in which it makes a finding of clear error, identifies the error, and gives a meaningful explanation of its decision to exercise continuing jurisdiction.
It would appear that, in order for the parties to have a reasonable opportunity to prepare for the hearing on the merits, the commission, if it grants reconsideration, must issue an order that identifies the error and sets forth the legal standards that will apply during the merits hearing and must issue this decision giving a reasonable amount of time before the second hearing begins.
In cases such as the present one, in which jurisdiction is alleged based on an error of law, it would appear unreasonable to expect counsel to proceed immediately with a hearing on the merits after an oral announcement of the granting of reconsideration. Also, given the court's admonition in Foster that a party may seek a writ to stop a hearing for which there is clearly no jurisdiction, it would appear that, if hearings on the merits follow immediately after hearings on the reconsideration applications, there will never be an opportunity to obtain a writ even in those cases where the lack of jurisdiction is patent on the face of the grant of reconsideration.
Therefore, in order to comply with Foster's requirement that an order granting reconsideration must identify the error and provide a meaningful explanation of the grounds supporting continuing jurisdiction prior to the exercise of jurisdiction, as well as Foster's indication that there must be an opportunity to challenge a hearing when the commission clearly and patently lacks jurisdiction, it would appear that the commission must issue a written grant of reconsideration and then set the hearing on the merits for a later date, at least in situations where jurisdiction is premised on application of the wrong legal standard in the prior hearing.
Accordingly, the magistrate recommends that the court decline to issue a writ stopping the scheduled hearing on the issue of whether to grant the application for reconsideration, but to issue a limited writ prohibiting the commission from proceeding immediately to a hearing on the merits if it decides to grant reconsideration.